HONORABLE RICHARD A. JONES

# UNITED STATES DISTRICT COURT
## WESTERN DISTRICT OF WASHINGTON
### AT SEATTLE

| | |
|---|---|
| ZHAKYP MUSAEV, | CASE NO. 2:26-cv-00522-RAJ |
| Petitioner, | ORDER GRANTING HABEAS PETITION |
| v. | |
| LAURA HERMOSILLO, *et al.*, | |
| Respondents. | |

ORDER – 1

## I.    INTRODUCTION

THIS MATTER comes before the Court on Petitioner Zhakyp Musaev's Petition for Habeas Corpus (the "Petition," Dkt. # 1). Respondents to the Petition include Laura Hermosillo (Seattle Field Office Director, Enforcement and Removal Operations, United States Immigration and Customs Enforcement ("ICE")), U.S. Department of Homeland Security ("DHS"), Kristi Noem (DHS Secretary), and Pamela Bondi (U.S. Attorney General) (collectively, "Respondents").[1] The Court has reviewed the Petition, the submissions in support of and in opposition to the Petition, and the balance of the record. *See* Dkt. ## 1, 7–10. For the reasons set forth below, the Court **GRANTS** Mr. Musaev's Petition.

## II.    BACKGROUND

Petitioner Zhakyp Musaev is a 36-year-old citizen of Kyrgyzstan. Dkt. # 1 ¶¶ 17, 38; *id.* at 23. Petitioner declares that he left Kyrgyzstan after he was threatened by the Kyrgyz government for his political beliefs. Dkt. # 1 ¶¶ 39–40; *id.* at 23. Petitioner crossed the United States border on April 19, 2024. Dkt. # 1 ¶ 41; *id.* at 23. Shortly thereafter, Petitioner was apprehended and arrested by an agent with United States Customs and Border Protection ("CBP"). Dkt. # 8 ¶ 4; Dkt. # 9-2 at 3 (Form I-213 providing that Petitioner was arrested by CBP at "approximately 8:40 a.m. . . . . approximately 2 miles west of the San Ysidro Port of Entry and approximately 30 yards north of the United States\Mexico International Boundary.") Petitioner was transported to the Imperial Beach Station for processing, and was thereafter transferred to San Diego Sector, where he was processed for expedited removal pursuant to Section 235(b)(1) of the Immigration and Nationality Act ("INA"). Dkt. # 8 ¶ 4. On April 24, 2024, Petitioner was transferred to ICE custody. *Id.* ¶ 5.

---

[1] The Petition also names Bruce Scott (Warden, Northwest ICE Processing Center) as a Respondent to the Petition, but he is not represented by the U.S. Attorney's Office, which filed the Return Memorandum in this case on behalf of the remaining Respondents. *See* Dkt. # 7 at 1 n.1.

ORDER – 2

On May 6, 2024, a United States Citizenship and Immigration Services ("USCIS") Asylum Officer ("AO") conducted a credible fear interview with Petitioner. *Id.* ¶ 6. Three days later, Petitioner was issued and served a Notice to Appear ("NTA") Form I-862, charging him as inadmissible under Sections 212(a)(6)(A)(i) and 212(a)(7)(A)(i)(I) of the INA. *Id.* ¶ 7. Petitioner's Form I-862 indicated that the NTA was "being issued after an asylum officer has found that the respondent has demonstrated a credible fear of persecution or torture." Dkt. # 9-1 at 2. On May 29, 2024, Petitioner was placed on humanitarian parole pursuant to Section 212(d)(5)(A) of the INA and was released from ICE custody. Dkt. # 8 ¶ 8; Dkt. # 9-3. The interim notice authorizing Petitioner's parole indicated that his parole authorization would automatically terminate one year after the date of the notice, and further provided that ICE "may also terminate parole on notice prior to the automatic termination date." Dkt. # 9-3.

Following Petitioner's release from ICE custody, he moved to Illinois. Dkt. # 1 at 23. On October 2, 2024, while on parole, Petitioner timely filed an Application for Asylum and for Withholding of Removal ("Form I-589") with the Chicago, Illinois Immigration Court. Dkt. # 1 ¶ 44; *id.* at 23; Dkt. # 8 ¶ 9. Petitioner alleges that Respondents issued him an Employment Authorization Document and that his master hearing was scheduled for November 19, 2025 before the Chicago Immigration Court. Dkt. # 1 ¶ 45. Petitioner declares that he has "always complied with the requirements of [his] release to the best of [his] ability" and previously appeared at his "Master hearing at the Chicago Immigration Court." *Id.* at 23.

On September 1, 2025, Petitioner was arrested in Washington State for Third Degree Driving While License Suspended pursuant to Washington Revised Code ("RCW") § 46.20.342(1)(c). Dkt. # 8 ¶ 10. On December 23, 2025, Petitioner was stopped by the Idaho State Police while driving a commercial trucking vehicle; during the stop, the officer noted that Petitioner's cargo was rated as hazardous materials and identified 33 violations. *Id.* ¶ 11. Upon discovery of Petitioner's pending charge in Washington, Idaho State Police

ORDER – 3

contacted CBP. *Id.* ¶ 12. CBP contacted ICE, who reviewed Petitioner's history and took Petitioner into ICE custody. *Id.* Petitioner was booked into the Northwest ICE Processing Center ("NWIPC") in Tacoma, Washington on December 24, 2025. *Id.* Petitioner asserts that, prior to his re-detention, "Respondents did not provide any written notice explaining the basis for the revocation of his release." Dkt. # 1 ¶ 9. He further alleges that Respondents "did not assess whether Petitioner presented a flight risk or danger to the community" prior to the re-detention, nor provide Petitioner with a "hearing before a neutral decisionmaker, where ICE was required to justify the basis for re-detention." *Id.*

On December 30, 2025, venue was changed to the Tacoma Immigration Court. Dkt. # 8 ¶ 13. Respondent indicates that Petitioner appeared, with counsel, for his scheduled master calendar hearing on January 12, 2026. *Id.* ¶ 14. Petitioner requested, and received, a bond hearing. *Id.* ¶ 15. At Petitioner's February 3, 2026, bond hearing, the Immigration Judge determined that the court had no jurisdiction as Petitioner was detained pursuant to Section 235(b) of the INA. *Id.*

Petitioner, proceeding in this habeas action *pro se*, filed the Petition on February 11, 2026. Dkt. # 1. Petitioner alleges: (1) that his continued detention and denial of his release on bond violates 8 U.S.C. § 1226(a); (2) that his continued detention and bond denial violates 8 C.F.R. §§ 236.1, 1236.1 and 1003.19; and (3) that his detention in immigration custody violates the Due Process Clause of the Fifth Amendment. Dkt. # 1 ¶¶ 49–69. As such, Petitioner seeks his immediate release from immigration detention, along with certain declaratory and injunctive relief. *Id.* at 20.

### III.  LEGAL STANDARD

"Writs of habeas corpus may be granted by . . . the district courts . . . within their respective jurisdictions." 28 U.S.C. § 2241(a). The district courts' habeas jurisdiction includes challenges to immigration-related detention. *Zadvydas v. Davis*, 533 U.S. 678, 687 (2001). A petitioner may seek habeas relief by showing that he or she is "in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. §

ORDER – 4

2241(c).  The petitioner bears the burden of proof by a preponderance of the evidence. *Davis v. Woodford*, 384 F.3d 628, 638 (9th Cir. 2004).

## IV.  DISCUSSION

Respondents contend that Petitioner is lawfully detained pursuant to Section 1225(b) of the INA.  Dkt. # 7 at 1.  This provision applies to "applicants for admission" to the United States, defined as a noncitizen "present in the United States who has not been admitted or who arrives in the United States[.]"  8 U.S.C. § 1225(a)(1).  Applicants for admission are subject to mandatory detention and may only be released on parole "for urgent humanitarian reasons or significant public benefit" pursuant to 8 U.S.C. § 1182(d)(5)(A).  *Jennings v. Rodriguez*, 583 U.S. 281, 287 (2018).  Petitioner responds that he is instead subject to the discretionary detention scheme under Section 1226(a) of the INA.  Dkt. # 1 ¶¶ 49–53.  Petitioner appears to argue, albeit indirectly, that he is a member of the Bond Denial Class certified in *Rodriguez Vazquez v. Bostock*, 802 F. Supp. 3d 1297 (W.D. Wash. 2025), and is therefore eligible for consideration for bond and bond hearings. *Id.*  ¶¶ 32, 36, 49–57.  The Court accordingly begins its discussion with an analysis of whether Petitioner belongs to the Bond Denial Class.

## A.   Petitioner is not a member of the *Rodriguez-Vasquez* Bond Denial Class.

The Court in *Rodriguez Vasquez* granted summary judgment to members of a certified Bond Denial Class, holding that their detention under Section 1225(b)(2) was unlawful under the INA.  802 F. Supp. 3d 1297, 1336 (W.D. Wash. 2025).  The Bond Denial Class, as certified by the Court, includes the following individuals:

> All noncitizens without lawful status detained at [NWIPC] who (1) have entered or will enter the United States without inspection, (2) are not apprehended upon arrival, (3) are not or will not be subject to detention under 8 U.S.C. § 1226(c), § 1225(b)(1), or § 1231 at the time the noncitizen is scheduled for or requests a bond hearing.

*Id.* at 1309.   This definition does not encompass Petitioner's circumstances. Petitioner entered the United States by foot on April 19, 2024.  Dkt. # 1 ¶ 41; *id.* at 23. According to the Form I-213 filed by Respondents, Petitioner "stated that he was not

ORDER – 5

inspected by an Immigration Officer at a designated Port of Entry when he entered the United States illegally afoot on April 19, 2024."[2]  Dkt. # 9-2 at 4.  It is unknown at what time Petitioner crossed the border on April 19, 2024, but by approximately 8:40 a.m. the same day, Petitioner had been arrested by a CBP agent approximately 2 miles west of the San Ysidro Port of Entry and 30 yards north of the border.  *Id.* at 3.  Petitioner was therefore "apprehended upon arrival," which precludes membership in the Bond Denial Class.  *See, e.g., Del Valle Castillo v. Wamsley*, No. 2:25-CV-02054-TMC, 2025 WL 3524932, at *1, 4 (W.D. Wash. Nov. 26, 2025) (classifying petitioner who "entered the United States . . . and was apprehended by border patrol agents shortly afterward" on the same day as having been "apprehended upon entry to the United States" and therefore not a member of the Bond Denial Class); *Maldonado v. Scott*, No. 2:26-CV-00014-TMC, 2026 WL 251819, at *2 (W.D. Wash. Jan. 30, 2026) (concluding that petitioner who was apprehended by CBP "shortly after he crossed the southern border of the United States" is precluded from membership in the Bond Denial Class).  However, as the Court observed in *Del Valle Castillo*, the fact that Petitioner is not a member of the Bond Denial Class does not preclude him from seeking habeas relief under Section 1226(a).  2025 WL 3524932, at *5.  Rather, courts must undertake an analysis of the facts applicable to noncitizens who have been apprehended upon arrival, including the specific circumstances of a noncitizen's initial release and re-detention, in order to determine whether Section 1226(a) or 1225(b) applies.  *See Quinonez Torres v. Hermosillo*, No. 2:26-CV-00076-TLF, 2026 WL 547591, at *4–5 (W.D. Wash. Feb. 23, 2026) (citing *Del Valle Castillo*, 2025 WL 3524932, at *5).

---

[2] The Court acknowledges Petitioner's challenge to the Form I-213 due to its attribution of certain statements and conduct to a differently-named individual.  Dkt. # 10 at 5.  However, based on its review of the record as a whole, the Court views this misattribution as reasonably explained by misidentification due to failure to substitute another noncitizen's name from a prior form.  The Court does not find that this misidentification raises any "fundamental question" with respect to "the evidentiary basis" for Petitioner's initial detention, as Petitioner suggests.  *Id.*  However, given that Respondents did not explain or even raise this inconsistency in their own briefing, the Court reminds counsel of their "obligation to ensure that their factual representations to the Court are accurate and adequately supported by the record."  *Telenchana. v. Hermosillo*, No. 2:26-CV-00363-GJL, 2026 WL 696806, at *1 n.1 (W.D. Wash. Mar. 12, 2026).

ORDER – 6

**B.      Petitioner was paroled pursuant to 8 U.S.C. § 1182(d)(5)(A).**

In the declaration submitted with his Petition, Petitioner represents that he was "released on [his] own recognizance" following his initial detention in April 2024.  Dkt. # 1 at 23.  Were this true, Petitioner's current detention would be more likely to fall within the discretionary framework governed by Section 1226(a) of the INA.  *See, e.g.*, *Herrera Gomez v. Wamsley*, No. 2:25-CV-02642-JNW, 2026 WL 279966, at *2 (W.D. Wash. Feb. 3, 2026) ("[i]mmigration officials . . . determined that Herrera Gomez was subject to Section 1226(a)—*not* Section 1225(b)—when they released her on her own recognizance.")  Here, however, the evidence submitted by Respondents indicates that Petitioner was released not on his own recognizance, but on humanitarian parole pursuant to 8 U.S.C. § 1182(d)(5)(A).  *See* Dkt. # 9-3 (informing Petitioner of ICE's decision to "parole [him] from its custody pursuant to its authority under section 212(d)(5)(A) of the Immigration and Nationality Act.").  Petitioner does not appear to dispute in his Reply that he was released on humanitarian parole under 8 U.S.C. § 1182(d)(5)(A).  *See* Dkt. # 10 at 2–3 (citing analysis of 8 U.S.C. § 1182(d)(5)(A) and its implementing regulations in *Y-Z-L-H v. Bostock*, 792 F. Supp. 3d 1123 (D. Or. 2025) and arguing that "[t]hat framework governs here.")

The Court therefore assumes *arguendo* that Petitioner was subject to Section 1225(b)'s mandatory detention scheme upon the termination of his parole.  *See Telenchana v. Hermosillo*, No. 2:26-CV-00363-GJL, 2026 WL 696806, at *10 (W.D. Wash. Mar. 12, 2026).  However, this "does not obviate Respondents' obligation to comply with due process" in re-detaining Petitioner.  *Id.*; *see also P.T. v. Hermosillo*, No. 25-cv-2249-KKE, 2025 WL 3294988, at *2 (W.D. Wash. Nov. 26, 2025) ("To the extent that the Government's briefing suggests that Section 1225(b) should be the beginning and end of the Court's inquiry, this position is emphatically rejected. In determining the lawfulness of Petitioner's detention, the Court will focus not on the Government's claimed authority to detain, but the process by which Petitioner was detained."); *Flores Torres v. Hermosillo*,

ORDER – 7

No. 2:25-cv-02687-LK, 2026 WL 145715, at *2, 7–8 (W.D. Wash. Jan. 20, 2026) (noncitizen detained under Section 1225(b), released on humanitarian parole under 8 U.S.C. § 1182(d)(5)(A), and subsequently re-detained had due process right to notice and opportunity to be heard before parole revocation).

**C.    Petitioner's detention violates the Due Process Clause.**

The Fifth Amendment of the U.S. Constitution forbids the government from depriving any person of "life, liberty, or property, without due process of law." U.S. Const. amend. V. "The fundamental requirement of due process is the opportunity to be heard 'at a meaningful time and in a meaningful manner.'" *Mathews v. Eldridge*, 424 U.S. 319, 333 (1976) (quoting *Armstrong v. Manzo*, 380 U.S. 545, 522 (1965)).

In *Mathews*, the Supreme Court set out three considerations for determining whether a particular governmental action comports with due process:

> First, the private interest that will be affected by the official action; second, the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards; and finally, the Government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail.

424 U.S. at 335.

Due process "applies to all 'persons' within the United States, including [noncitizens], whether their presence here in lawful, unlawful, temporary, or permanent." *Zadvydas*, 533 U.S. at 693 (citations omitted). In *Rodriguez Diaz v. Garland*, 53 F.4th 1189 (9th Cir. 2022), the Ninth Circuit assumed without deciding that the three-part test set forth in *Mathews* applies in the immigration detention context. *Id.* at 1207. District courts have subsequently applied the *Mathews* test in that context. *See E.A. T.-B. v. Wamsley*, 795 F. Supp. 3d 1316, 1321 n.4 (W.D. Wash. 2025) (collecting cases). And, as previously discussed, courts have applied the test to the posture applicable in this case, *i.e.*, where a noncitizen was detained under Section 1225(b), released on humanitarian parole under 8 U.S.C. § 1182(d)(5)(A), and subsequently re-detained. *Torres*, 2026 WL 145715,

ORDER – 8

at *2, 7–8.  Respondents appear to agree that the *Mathews* test applies here.  *See* Dkt. # 7 at 11–12.

       i.   <u>Petitioner established a strong liberty interest while on parole</u>.

With respect to the first *Mathews* factor, Respondents concede that they "recognize the 'weighty liberty interests implicated by the Government's detention of noncitizens.'" *Id.* at 11 (citing *Reyes v. King*, No. 19-cv-8674, 2021 WL 3727614, at *11 (S.D.N.Y. Aug. 20, 2021)).  The Court further observes that this "remains the case even when an individual is subject to conditions of parole or release." *Telenchana*, 2026 WL 696806, at *10 (citing *Doe v. Becerra*, 787 F. Supp. 3d 1083, 1093 (E.D. Cal. Mar. 3, 2025)).  Following his release from custody in May 2024, Petitioner acquired a significant liberty interest entitled to the protections of the Due Process Clause.  *Id.* at *11.  In reasonable reliance on this liberty interest, Petitioner timely applied for asylum in the United States.  *Id.*; see Dkt. # 1 ¶ 44; *id.* at 23; Dkt. # 8 ¶ 9.  Petitioner further states that he obtained an Employment Authorization Document while on parole.  Dkt. # 1 ¶ 45.  The first *Mathews* factor thus weighs strongly in favor of Petitioner.  *Telenchana*, 2026 WL 696806, at *11.

       ii.   <u>The risk of erroneous deprivation of liberty is high</u>.

Turning to the second *Mathews* factor, the risk of erroneous deprivation of liberty, Respondents provide that "Petitioner's criminal history warranted revocation." Dkt. # 7 at 11.  As such, Respondents argue that Petitioner's re-detention comported with due process requirements.  *Id.* (citing *Dieng v. Hermosillo*, No. 2:26-cv-00190-LK, 2026 WL 411857, at *8 (W.D. Wash. Feb. 13, 2026)).  The Court disagrees.  Here, the record suggests that Respondents "failed to comply with regulatory requirements for revoking humanitarian parole, which heightens the risk of erroneous deprivation." *Telenchana*, 2026 WL 696806, at *11; *see also Torres*, 2026 WL 145715, at *7 & n.3 ("[T]he risk of erroneous deprivation is significant where the government fails to follow its own procedures for revocation of parole, thus depriving the noncitizen of process due prior to revocation.") (collecting cases)).

ORDER – 9

Section 212(d)(5)(A) of the INA provides that parole may be granted "only on a case-by-case basis for urgent humanitarian reasons or significant public benefit[.]" 8 U.S.C. § 1182(d)(5)(A). The provision's implementing regulations impose another requirement: to qualify for parole, the noncitizen must "present neither a security risk nor a risk of absconding." 8 C.F.R. § 212.5(b). The implementing regulations also specify that parole may be terminated in two ways; each termination mechanism is subject to its own procedural requirements. First, parole is automatically terminated if the noncitizen departs from the United States or "at the expiration of the time for which parole was authorized." 8 C.F.R. § 212.5(e)(1). If parole is automatically terminated, no written notice is required. *Id.* Second, termination may occur upon either "accomplishment of the purpose for which parole was authorized" or the decision of an authorized DHS official that "neither humanitarian reasons nor public benefit warrants the continued presence of the [noncitizen] in the United States." 8 C.F.R. § 212.5(e)(2)(i); *see also* 8 U.S.C. § 1182(d)(5)(A) ("[W]hen the purposes of such parole shall, in the opinion of the Secretary of Homeland Security, have been served the [noncitizen] shall forthwith return or be returned to the custody from which he was paroled[.]"). Under these circumstances, the noncitizen must be provided written notice of the parole termination. 8 C.F.R. § 212.5(e)(2)(i).

Once parole has been terminated, "any order of exclusion, deportation, or removal previously entered shall be executed." *Id.*; 8 C.F.R. § 212.5(e)(1). If this cannot be accomplished "within a reasonable time, the [noncitizen] shall again be released on parole" unless an authorized DHS official opines that "the public interest requires that the [noncitizen] be continued in custody." 8 C.F.R. § 212.5(e)(2)(i). In other words, "unless detention is required for the timely removal of a noncitizen, continued detention following release on parole must be supported by individualized assessment by an authorized DHS official." *Telenchana*, 2026 WL 696806, at *7 (citing 8 C.F.R. § 212.5(e)(2)(i)). Otherwise, the noncitizen must be returned to humanitarian parole. *Id.* Viewed as a whole,

ORDER – 10

therefore, the applicable regulatory scheme provides that, "where parole has automatically terminated upon expiration and the noncitizen is not returned to custody . . . continuation of humanitarian parole may be implied and, thereafter, the procedures for on-notice termination apply." *Id.* (citing *Dieng*, 2026 WL 411857, at *6).

Here, the record suggests that Petitioner's initial grant of parole may have been subject to automatic termination as of May 10, 2025, or alternatively as of May 29, 2025 (one year after the two different dates appearing on Petitioner's Interim Notice Authorizing Parole). Dkt. # 9-3. However, Respondents do not appear to explicitly advance this argument, and instead contend that circumstances arising several months after May 2025, including Petitioner's September 2025 arrest and his December 2025 presence in state custody, warranted revocation. Dkt. # 7 at 8–9, 11. The Court therefore presumes that Petitioner's humanitarian parole was extended by ICE, and the record supports this presumption, as Petitioner's parole expired approximately seven months prior to his December 2025 re-detention. *See Telenchana*, 2026 WL 696806, at *11 (inferring extension of humanitarian parole by ICE where petitioners were not re-detained "on or near the expiration of their humanitarian parole"); *Dieng*, 2026 WL 411857, at *6 (same). Accordingly, Petitioner's parole could only be terminated upon written notice and either the "accomplishment of the purpose for which parole was authorized" or the decision of an authorized DHS official that "neither humanitarian reasons nor public benefit" warranted the continued presence Petitioner in the United States. 8 C.F.R. § 212.5(e)(2)(i).

Petitioner claims that Respondents "did not provide any written notice explaining the basis for the revocation of his release" prior to his re-detention. Dkt. # 1 ¶ 9. Petitioner additionally alleges that Respondents did not assess whether he presented a flight risk or danger to the community, nor did they provide a hearing before a neutral decisionmaker wherein ICE was required to justify the basis for Petitioner's re-detention or explain why Petitioner presents a flight risk or danger to the community. *Id.* Respondents do not appear to contest these allegations, instead responding that due process does not impose "blanket

ORDER – 11

requirements" mandating written notice or a hearing, and adding that "Petitioner's criminal history warranted revocation."[3]   Dkt. # 7 at 11.   These generalized assertions do not constitute evidence that an authorized DHS official determined that Petitioner's continued parole was no longer warranted for "humanitarian reasons" or for the "public benefit."   8 C.F.R. § 212.5(e)(2)(i); *see Telenchana*, 2026 WL 696806, at *5, 11 (finding that implementing regulations were not followed before revoking noncitizen's parole despite government's statement that "immigration officials learned [the noncitizen] incurred a violation for driving with a suspended license ahead of his re-detention," because there was "no allegation or evidence that this violation led immigration officials to determine he posed a risk of flight or danger to the community.")   Of note, by virtue of his initial release on humanitarian parole, Petitioner was found not to be a flight risk or a danger to the community.   Although circumstances may have changed prior to Petitioner's re-detention, Respondents' failure to adhere to applicable implementing regulations created an undue risk of erroneous deprivation in light of this previous finding.   *Telenchana*, 2026 WL 696806, at *12 (citing *Doe*, 787 F. Supp. 3d at 1094).

Accordingly, the second *Mathews* factor favors Petitioner.   *See, e.g.*, *Zavorin v. Wamsley*, No. 2:26-CV-00173-DGE, 2026 WL 309733, at *4 (W.D. Wash. Feb. 5, 2026) (second *Mathews* factor weighed "strongly" in noncitizen's favor where the government failed to show it provided written notice of parole revocation or that an authorized DHS official "determined that the purposes of the parole have been served or

---

[3] Respondents separately argue that "the circumstances by which [Petitioner] came to be in ICE custody" warranted his revocation, as Petitioner was already in state custody on unrelated grounds at the time of his re-detention by ICE.  Dkt. # 7 at 11 (citing *E.A. T.-B.*, 795 F. Supp. 3d 1316, as distinct).  However, the mere fact that Petitioner was in the (likely short-term) custody of another law enforcement agency on independent grounds does nothing to absolve Respondents of their independent obligation to justify the basis for detaining Petitioner under the INA and its implementing regulations.  As discussed in this section, Respondents were bound to abide by their own regulations; their failure to do so heightened the risk that *they* erroneously deprived Petitioner of his strong liberty interest in remaining free from potentially indefinite detention in ICE custody.

ORDER – 12

that subsequent changes justified . . . re-detention"); *Telenchana*, 2026 WL 696806, at *12 (collecting cases).

                iii.    <u>Respondents' interest in re-detaining Petitioner without due process is minimal</u>.

With respect to the third *Mathews* factor, Respondents cite "the heightened government interest in the immigration detention context." Dkt. # 7 at 12 (citing *Rodriguez Diaz*, 53 F.4th at 1206). Respondents note that the government's interest is especially strong "when it comes to determining whether removable aliens must be released on bond during the pendency of removal proceedings." *Id.* (citing *Rodriguez Diaz*, 53 F.4th at 1208). Respondents also cite the government's interest in "protecting immigration proceedings from unnecessary delay, especially considering Congress's purpose for enacting Section 1225(b) and require parole for release for those subject to such mandatory detention." *Id.* While the Court recognizes the government's interests in the efficient administration of immigration laws, those interests are "not impermissibly burdened by affording the process laid out in 8 C.F.R. § 212.5 because it is required to follow its own regulations." *Zavorin*, 2026 WL 309733, at *5 (citing *O.F.B. v. Maldonado*, No. 25-CV-6336 (HG), 2025 WL 3277677, at *7 (E.D.N.Y. Nov. 25, 2025)). As discussed, Respondents failed to provide Petitioner with the process set forth in 8 C.F.R. § 212.5(e) prior to revoking Petitioner's parole and re-detaining him. While Respondents vaguely argue that "Petitioner's criminal violations while on parole qualify him as a special case," Dkt. # 7 at 12, they fail to explain how "providing Petitioner with notice and an opportunity to be heard on the basis for revoking his parole would have impaired" their interest in re-detaining him. *Zavorin*, 2026 WL 309733, at *5 (citing *O.F.B.*, 2025 WL 3277677, at *7). Accordingly, the third *Mathews* factor favors Petitioner.

In sum, all three *Mathews* factors favor Petitioner. The Court therefore concludes that Respondents' re-detention of Petitioner violated his procedural due process rights.

ORDER – 13

**D.      The Court need not reach Petitioner's other claims.**

In addition to his due process claim, Petitioner asserts that his bond denial violates 8 C.F.R. §§ 236.1, 1236.1 and 1003.19.  Dkt. # 1 ¶¶ 54–57.  Because the Court concludes that Petitioner's detention violates due process, it is not necessary for the Court to assess this claim.

## V.      REMEDY

Having determined that Petitioner was re-detained without due process, the Court must assess the appropriate remedy.  Petitioner requests immediate release from custody, along with an order prohibiting Respondents from transferring him from the Western District of Washington without court approval.  Dkt. # 1 at 20.  Respondents counter that a post-deprivation hearing would be appropriate in light of Petitioner's criminal violations, which make him a "special case."  Dkt. # 7 at 13–13 (citing *Zinermon v. Burch*, 494 U.S. 113, 127 (1990); *Martinez Hernandez v. Andrews*, No. 1:25-CV-01035 JLT HBK, 2025 WL 2495767, at *11–12 (S.D. Cal. Aug. 28. 2025) (collecting cases)).  Respondents do not address Petitioner's request for injunctive relief prohibiting his transfer from this District.

Respondents' reliance on *Zinermon* and *Martinez Hernandez* is misplaced.  As to *Zinermon*, the Court agrees with the analyses undertaken by other courts in this District rejecting the government's argument.  *See Sarwari v. Wamsley*, C26-00121TL, 2026 WL 279968, at *4–5 (W.D. Wash. Feb. 3, 2026); *Bravo-Zambrano v. Bondi*, No. C26-0167JLR, 2026 WL 879245, at *3–4 (W.D. Wash. Mar. 31, 2026).  Specifically, the Court concludes that a non-citizen's re-detention by immigration authorities does not qualify as a "special case," as contemplated by the "*Parratt* rule," wherein post-deprivation remedies provide all the process that is due because "the value of predeprivation safeguards [ ] is negligible in preventing the kind of deprivation at issue."  *Zinermon*, 494 U.S. at 127-29 (discussing *Parratt v. Taylor*, 451 U.S. 527 (1981).  With respect to *Martinez Hernandez*, the court in that case, and those in the cases upon which it relied, were adjudicating motions for preliminary injunctions, not habeas petitions.  *Martinez*

ORDER – 14

*Hernandez*, 2025 WL 2495767, at *12 (collecting cases).  In doing so, the reviewing courts clarified that, while "prompt, post-deprivation process [was] required" even *before* the petitions were adjudicated, they were "*not* making an ultimate determination that [a prompt, post-deprivation hearing] was all the process the petitioners were due." *Sarwari*, 2026 WL 279968, at *5 (citing *Martinez Hernandez*, 2025 WL 2495767, at *12).

The Court concludes that an order of immediate release is the appropriate remedy in this case given the "constitutional defects underlying [Petitioner's] re-detention without any meaningful individualized review performed by Respondents." *Telenchana*, 2026 WL 696806, at 13.  The Court reaches this conclusion despite Respondents' submission that, prior to Petitioner's re-detention, they reviewed his "criminal [] history," including an arrest for driving with a suspended license and a subsequent arrest for violations associated with his operation of a commercial vehicle.  Dkt. # 7 at 8–9; *see Telenchana*, 2026 WL 696806, at *5, 13 (ordering immediate release of petitioner with violation for driving with a suspended license, where Respondents offered no allegation that the violation "led immigration officials to determine he posed a risk of flight or danger to the community"); *Torres*, 2026 WL 145715, at *8 (ordering immediate release of petitioner whose parole was revoked without adequate procedures because "she [was] *suspected* of having committed a crime"); *Bravo-Zambrano*, 2026 WL 879245, at *4, 6 (ordering immediate release of petitioner detained without due process after previous OREC release, notwithstanding two convictions for driving without a license in the interim).

With respect to Petitioner's request for an order "prohibiting the Respondents from transferring Petitioner from the district without the court's approval," Dkt. # 1 at 20, the Court construes this request as seeking an order requiring pre-transfer notice until Petitioner receives habeas relief.  *Toribio v. Scott*, No. 2:25-CV-02540-TMC, 2025 WL 3906472, at *2 (W.D. Wash. Dec. 31, 2025).  This request will be moot once this Order granting habeas relief is entered. *Id.*  To the extent Petitioner seeks other relief, those issues have not been properly briefed.

ORDER – 15

## VI.  CONCLUSION

Based on the foregoing, the Court **GRANTS** Petitioner Zhakyp Musaev's Petition for Writ of Habeas Corpus.  Dkt. # 1.  The Court **ORDERS** that Respondents:

(1)    Shall immediately release Petitioner Zhakyp Musaev from custody;

(2)    Shall file with the Court a notice within 2 business days confirming Mr. Musaev's release; and

(3)    Shall not re-detain Mr. Musaev unless and until Respondents provide him with 10 days' written notice and a meaningful opportunity to be heard before an immigration judge to determine whether detention is appropriate.

Dated this 6th day of April, 2026.

The Honorable Richard A. Jones
United States District Judge

ORDER – 16